# Third District Court of Appeal

## State of Florida

Opinion filed December 14, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-1840
Lower Tribunal No. 09-87096
_____

**Bank of America, N.A.,**
Petitioner,

vs.

**Ryan Atkin,**
Respondent.

A Case of Original Jurisdiction – Prohibition.

Liebler, Gonzalez & Portuondo, and Elizabeth A. Henriques, for petitioner.

Jacobs Legal, PLLC, and Bruce Jacobs, Amida U. Frey, and Anna C. Morales, for respondent.


Before SUAREZ, LOGUE, and LINDSEY, JJ.

LOGUE, J.

Bank of America, N.A. petitions for a writ of prohibition because the trial court denied its motion to disqualify. Finding the Bank's motion legally sufficient, we grant the petition.

## FACTS

On December 9, 2009, Bank of New York Mellon filed the subject foreclosure complaint. Essentially, the complaint alleged that the Borrower, Ryan Atkin, signed a conventional note and mortgage to borrow $442,800 for the purchase of a residential condominium on October 20, 2006, and stopped making payments by September 1, 2008. As the litigation proceeded over the next nine years, the Borrower filed eleven suggestions of bankruptcy. Finally, on March 15, 2018, the trial court issued an order setting the case for trial on May 24, 2018. The trial order required pre-trial motions to be filed no later than 15 days before trial.

On May 15, 2018, nine days before trial, Bruce Jacobs, Esquire, was substituted as the Borrower's counsel. On May 21, 2018, three days before trial, the Borrower filed a motion for an order to show cause why Bank of New York Mellon should not be held in criminal contempt for fraud on the court. Borrower's counsel signed the motion both as attorney and verifying witness. Although the foreclosure in this case was filed by Bank of New York Mellon, Bank of New York Mellon's servicing agent was Bank of America. The motion did not seek criminal contempt against Bank of America. The motion, however, maintained that "Plaintiff and its

2

servicer, Bank of America, are engaged in an unconscionable scheme." The Borrower did not set the motion for hearing.[1]

Three days later, on May 24, 2018, the case came for trial. Present were the representative of Bank of New York Mellon; Bank of New York Mellon's attorney from the law firm of Tromberg Law Group, PA; an employee of Bank of America who was slated to testify as the servicing agent; Bank of America's attorneys from the law firm of Liebler, Gonzalez & Portuondo; and the Borrower's counsel.

The Borrower requested that its motion to show cause be heard before trial. Bank of New York Mellon objected on the basis that the motion was filed in violation of the court's pretrial order and was not noticed for hearing. The trial court overruled the objection explaining "I've known Mr. Jacobs a long time – and I was

[1] In the motion, Borrower's counsel ostensibly averred that, since 2005, "Bank of America and other large banks" had been involved in mortgage fraud; in 2010, the Florida Attorney General's Office generated a PowerPoint presentation regarding "Unconscionable Acts in Foreclosures," which contained examples of improper actions by various banks in other foreclosures (an unauthenticated copy of the 97-page PowerPoint presentation was attached to the motion); in 2011, Bank of America entered into a national consent judgment which found it had "litigated cases without properly endorsed notes;" in 2012, "Bank of America and other large banks" entered into a National Mortgage Foreclosure settlement based upon their fraudulent conduct in other foreclosures; Bank of America and its officers "engaged in perjury, bad faith stonewall discovery tactics, and even ordered the destruction of 1.88 billion records under subpoena" at unspecified times in unidentified cases or investigations; in November of 2015, in a different case for which no citation was provided, Bank of New York Mellon produced a Bank of America employee as its corporate representative and she "gave false testimony." Borrower's counsel also averred that the Assignment of Mortgage in this case was a "false, robo-signed document" and the Mortgage Loan Schedule in this case was a "false document."

here before the foreclosure thing got crazy – he's been trying to make law." He also noted, "Mr. Jacobs has done a lot of work over the course of the years to be able to be standing here in front of everybody and making these suggestions."

In the five-hour hearing that followed, the trial court permitted Borrower's counsel, over objection, to advocate as a lawyer and testify as a witness in a seamless manner, such that the record is unclear when he was advocating and when testifying. In the course of the hearing, referring to factual issues relating to the Borrower's claim, the trial court told Borrower's counsel "I think you need to get that established as a matter of fact, and maybe by a person with knowledge" and "I don't think you're the person to talk about it. I think you want to put together that evidence in some fashion." At the end of the hearing, the trial court orally announced it would grant the Borrower's motion and enter an order to show cause why Bank of New York Mellon should not be held in criminal contempt.

After the hearing, the Borrower's counsel submitted a proposed order. The Borrower's proposed order indicated that the order to show cause was "based on the Court's own motion" (not the Borrower's motion); relied upon an affidavit filed after the hearing, namely, "the sworn affidavit of Bruce Jacobs, Esq. filed on June 1, 2018, as an officer of the court with 10 years of experience defending against Bank of New York Mellon and Bank of America foreclosures;" and appointed Borrower's counsel as the prosecuting attorney.

On July 30, 2018, instead of granting the Borrower's motion as it indicated at the hearing, the trial entered an order, providing "the [Borrower's] Proposed Order should not be entered as drafted. Accordingly, the [Borrower's] Verified Motion is denied without prejudice for [the Borrower] to file his own motion which will be set for an evidentiary hearing."

A few days later, on August 3, 2018, Borrower's counsel appeared before the same trial court as the lawyer for a different borrower in an unrelated foreclosure action involving a different lender represented by different lawyers.[2] The trial court and Borrower's counsel discussed the July 30, 2018 order and the Borrower's plan to file another motion to show cause. The discussion was taken down by a court reporter. Among other things the following exchange took place:

> MR. JACOBS: [My next series of motions to be filed before various judges are] going to be addressed to Bank of New York, Bank of America and the Liebler, Gonzalez, Portuondo Law Firm. . . . [If the different judges] decide if I'm right and decide what an appropriate sanction is, *which should then be bulletproof on appeal*, because a sanction is reviewed on an abuse of discretion. So as long as you all agree, it can't be an abuse of discretion.

> THE COURT: Is this what you are doing in your other case?

---

[2] U.S. Bank NA v. Llovet, Case No. 2016-032717-CA-01 (Fla. 11th Cir. Ct.).

| MR. JACOBS: | This is what I'm doing in my Bank of America case. |
|---|---|
| THE COURT: | I just recently signed an order denying the motion or the rule to show cause [in Bank of New York Mellon v. Atkin], based on the Court's inherent authority, because I think you're going to prepare your own with evidence. |
| MR. JACOBS: | I'm finalizing it right now. You'll have it – |
| THE COURT: | *That is what I was anticipating, so I finally took care of the loose ends* in that case. |
| MR JACOBS: | It's coming. |

(Emphasis added).

On August 7, 2018, the Borrower filed a second motion for an order to show cause why Bank of New York Mellon should not be held in criminal contempt. This second motion was similar to the first except that it also sought contempt against Bank of America and the law firm of Liebler, Gonzalez & Portuondo as the lawyers for Bank of America. As reflected by the certificate of service, however, the Borrower did not certify that the motion was served on Bank of America or Liebler, Gonzalez & Portuondo.

On August 20, 2018, Bank of America, now a named subject of a motion to show cause for criminal contempt, filed a motion to disqualify the trial court reciting

6

the facts set forth above. The trial court denied the motion as "untimely and legally insufficient." This petition followed.

## ANALYSIS

### a. Disqualifying Third District Court of Appeal.

The Borrower makes three arguments why the petition should not be granted. First, it argues that this entire court must disqualify itself. In doing so, the Borrower "adopts and re-avers all the grounds raised in the previous motions to disqualify this court [filed by Mr. Jacobs in other cases]." For the fourth time, we reject this argument. HSBC Bank USA, Nat'l Ass'n v. Buset, Case No. 3D16-1383 (Fla. 3d DCA May 14, 2018) (denying motion to disqualify the entire Third District Court of Appeal), case dismissed, Case No. SC18-1099 (Fla. July 20, 2018) ("It appearing to the Court that the notice was not timely filed, it is ordered that the cause is hereby dismissed on the Court's own motion."); Rodriguez v. Bank of Am., N.A., Case No. 3D17-272 (Fla. 3d DCA July 2, 2018) (denying motion to disqualify the entire Third District Court of Appeal), rev. denied, Case No. SC18-1288, (Fla. Aug. 7, 2018), cert. pending, Case No. 18-723 (U.S. Oct. 11, 2018); Marin v. Bank of New York, 220 So. 3d 1220 (Fla. 3d DCA 2018) (denying motion to disqualify the entire Third District Court of Appeal), rev. denied, 2017 WL 1398651(Fla. July 31, 2018), cert. pending, Case No. 18-711 (U.S. Sept. 19, 2018).

### b. Timeliness.

7

Next, the Borrower argues the motion was untimely. "A motion to disqualify shall be filed within a reasonable time not to exceed 10 days after discovery of the facts constituting the grounds for the motion." Fla. R. Jud. Admin. 2.330(e). Bank of America filed its motion on August 20, 2018. The Borrower argues that Bank of America should have filed its motion within 10 days of the August 3, 2018 hearing at which the trial court and Borrower's counsel had the ex parte communication regarding this case.

Bank of America counters that, as of August 3, 2018, it was not a party to the lawsuit and was not named as a subject in the Borrower's first motion to show cause. Thus, Bank of America argues, it had neither reason nor ability to file a motion to disqualify at that time. We agree. Only after the Borrower served his second motion to show cause naming Bank of America as one of the subjects, and seeking affirmative relief against Bank of America, did Bank of America have legal standing to seek disqualification of the trial court. Any anticipatory motion to disqualify filed by Bank of America before that time would have been premature at best.

The Borrower's second motion to show cause was filed on August 7, 2018. The certificate of service, however, indicates that Borrower's counsel served the motion only on Bank of New York Mellon, not on Bank of America or Liebler, Gonzalez & Portuondo. Indeed, the papers filed by the Borrower are silent regarding

8

when, or if, the Borrower ever noticed or served its second motion on Bank of America.

In its petition, Bank of America states it was first served the appendix to the motion (without the motion itself) on August 8, 2018. Even assuming this incomplete service was sufficient to trigger the running of the 10-day filing period of Rule 2.330(e), the tenth day from August 8, 2018, fell on August 18, 2018, a Saturday, and therefore the filing of the motion on Monday, August 20, 2018 was timely because "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fla. R. Jud. Admin. 2.514(a)(1)(C); see Kazran v. Buchanan, 158 So. 3d 748, 749 (Fla. 2d DCA 2015) (holding the rules for computing time under rule 2.514 apply to the times periods provided in rule 2.330). In these circumstances, we do not see a basis in the record to support the trial court's finding that the motion to disqualify was untimely.

### c. Legal Sufficiency.

Third, the Borrower argues the motion to disqualify was legally insufficient. The test for determining the legal sufficiency of a motion for disqualification is whether "the facts alleged (which must be taken as true) would prompt a reasonably prudent person to fear that he could not get a fair and impartial trial." Molina v. Perez, 187 So. 3d 909, 909 (Fla. 3d DCA 2016) (quoting Brofman v. Fla. Hearing Care Ctr., Inc., 703 So. 2d 1191, 1192 (Fla. 4th DCA 1997)). We therefore must

consider whether a reasonably prudent person would fear that he or she could not receive a fair and impartial trial because the trial court engaged in the conduct described above. We hold a reasonable person would.

First, the trial judge repeatedly made comments that a reasonable person could interpret as giving legal advice to the Borrower's counsel. "Trial judges must studiously avoid the appearance of favoring one party in a lawsuit, and suggesting to counsel or a party how to proceed strategically constitutes a breach of this principle." Shore Mariner Condo. Ass'n v. Antonious, 722 So. 2d 247, 248 (Fla. 2d DCA 1998). "A trial judge crosses the line when he becomes an active participant in the adversarial process, i.e., gives 'tips' to either side." Great Am. Ins. Co. v. 200 Island Blvd. Condo. Ass'n, Inc., 153 So. 3d 384, 388 (Fla. 3d DCA 2014).

Here, the trial court crossed the line when he advised the Borrower's counsel "you need to get that established as a matter of fact, and maybe by a person with knowledge" and "I don't think you're the person to talk about it. I think you want to put together that evidence in some fashion." A prudent person could reasonably understand these comments as suggesting to the Borrower's attorney how best to get certain evidence into the record in an admissible form. Moreover, in its order and in its statement during the ex parte contact, the trial court made comments that could reasonably be interpreted as encouraging the Borrower to file a second motion for criminal contempt but with a better evidentiary foundation.

10

In these ways, the trial court "[r]egrettably . . . abandoned his post as a neutral overseer of the dispute between the parties." Great Am. Ins. Co., 153 So. 3d at 385; see Copiers Int'l Corp. v. All Am. Bus. Sys., Inc., 825 So. 2d 438 (Fla. 3d DCA 2002) (prohibition proper where trial court suggested one party pursue discovery regarding opposing party's possible criminal conduct). As we have held in the past, we hold "[s]uch legal advice, standing alone, is sufficient to compel disqualification." Great Am. Ins. Co., 153 So. 3d at 388.

The trial court also engaged in an ex parte communication with the Borrower's counsel at the August 3, 2018 hearing in a different case. "The most insidious result of ex parte communications," the Supreme Court of Florida has explained, "is their effect on the appearance of the impartiality of the tribunal. The impartiality of the trial judge must be beyond question." Rose v. State, 601 So. 2d 1181, 1183 (Fla. 1992). Again, whatever the trial court might have subjectively intended, a prudent person would reasonably fear the exchange reflected a consultation between the trial judge and Borrower's counsel concerning the need to "tie up loose ends" and make the trial court's future decision in the Borrower's favor "bulletproof on appeal." This ex parte communication is an independent basis for prohibition. Masten v. State, 159 So. 3d 996, 997 (Fla. 3d DCA 2015) (granting prohibition when a trial judge engaged in ex parte conduct to assist one party on appeal).

11

We are confident it will be unnecessary to formally issue the writ. <u>Masten</u>, 159 So. 3d at 998.

Petition granted.

**ANY POST-OPINION MOTION MUST BE FILED WITHIN SEVEN DAYS. A RESPONSE TO THE POST-OPINION MOTION MAY BE FILED WITHIN FIVE DAYS THEREAFTER.**